### In re BRITISH AMERICAN CEDAR CO.

(District Court, W. D. Washington, N. D.    September 25, 1914.)

#### No. 50.

1. CARRIERS (§ 197*)—CARRIERS OF GOODS—LIEN FOR FREIGHT CHARGES.

A railroad company has a lien on goods carried for the freight charges, and may enforce the same by a proceeding in rem in a proper court.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 891–900; Dec. Dig. § 197.*]

2. CARRIERS (§ 197*)—LIEN FOR FREIGHT—WRONGFUL REMOVAL OF GOODS BY CONSIGNEE.

The action of a railroad company in spotting a car containing goods on a spur track leading to the consignee's plant, for the purpose of being unloaded, did not deprive it of possession of the car, and the unloading of the car without its consent and against its expressed stipulation did not constitute a delivery of the goods as against its claim for a lien for freight.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 891–900; Dec. Dig. § 197.*]

3. CARRIERS (§ 197*)—LIEN FOR FREIGHT—DELIVERY OF GOODS.

The finding of a referee that there was not an unconditional delivery of goods by a railroad company to a bankrupt, such as would deprive the carrier of its lien for freight, *held* supported by the evidence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 891–900; Dec. Dig. § 197.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In the matter of the British American Cedar Company, bankrupt. On review of order of referee allowing the Great Northern Railway Company a lien on certain machinery for freight. Affirmed.

Griswold & Hudson, of Bellingham, Wash., for trustee.

Romaine & Abrams, of Bellingham, Wash., for Capital Mach. Co.

F. V. Brown, F. G. Dorety, and R. J. Hagman, all of Seattle, Wash., for Great Northern Ry. Co.

NETERER, District Judge. In December, 1913, the bankrupt purchased a car load of machinery which was consigned to it over the Great Northern Railway, and arrived in Bellingham April 2, 1914. The car was "spotted" on the spur track leading into the manufacturing plant of the bankrupt by the Great Northern Railway Company, through the Bellingham & Northern Railway Company. The car was unloaded by the bankrupt before the freight charges due for transportation had been paid. It is contended by the petitioner, the Great Northern Railway Company, that the car was unloaded without delivery to the bankrupt, and against the positive agreement and stipulation when the car was placed there, and that the car was not to be unloaded until the freight charges were paid. The trustee objects to the claim of the Great Northern Railway Company for redelivery of the machinery or the payment of the charges as a preferred lien, upon the ground that the machinery was delivered and any lien for transportation charges which would inure to the railway company was thereby waived. The matter was tried before the referee, testimony submitted by the respective parties, and the referee found that the car had not been delivered to the bankrupt, and that it was unloaded without the consent of the railway company and against its positive stipulation and agreement. Petition for review has been presented, and the matter is for hearing upon the issue thus raised.

[1] That the railway company has a right to retain the goods until the freight charges have been paid, and therefore a lien upon the goods for the amount, and may enforce its lien by a proceeding in rem in a proper court, cannot be questioned. Bulkley v. Naumkeag Steam Cotton Co., 24 How. 386, 16 L. Ed. 599; Sears v. Wills, 1 Black, 108, 17 L. Ed. 35.

[2] The action of the railway company in "spotting" the car upon the spur track leading to bankrupt's plant for the purpose of allowing it to unload the car did not deprive the railway company of the possession of the car, and the unloading of the car without the consent of the railway company and against its expressed stipulation would still permit the railway company to repossess itself of the car, or the machinery if unloaded, for the purpose of enforcing its lien. Darlington et al. v. Mo. Pac. Ry. Co., 99 Mo. App. 1, 72 S. W. 122.

The lien of the carrier is not affected where delivery is secured by fraud (5 American & English Enc. of Law, page 412), nor is the lien lost where the property is taken from the carrier's possession without his consent (25 Cyc. 675). The lien of the carrier is lost by unconditional delivery or voluntary surrender of the goods, but there may be a conditional delivery, reserving the lien (4 Elliott on Railroads [2d

Ed.] § 1572), or if the delivery is procured upon the promise of the consignee to pay the freight as soon as the delivery is made, which he fails to do, the carrier does not lose his lien or his right of possession of the goods (2 Hutchinson on Carriers [3d Ed.] § 871, at page 967); and, unless the stipulation is that delivery shall precede the payment, and the surrounding circumstances clearly show that the claim of lien has been abandoned, the carrier will not be deprived of the security which is afforded to him (2 Hutchinson on Carriers [3d Ed.] page 970), and where they are taken possession of by the consignee against the carrier's consent, there is no delivery as against the claim for lien (Hahl et al. v. Laux, 42 Tex. Civ. App. 182, 93 S. W. 1080; Martland v. Bekins Van & Storage Co., 19 Cal. App. 283, 125 Pac. 759).

[3] A careful reading of all of the evidence which was submitted to the referee convinces me that the referee did not err in his conclusions that it was the intention of the agents of the Great Northern Railway Company to have the machinery remain on the car until the freight charges were paid, and that the promises made by the manager of the bankrupt lulled the agent of the carrier into a feeling of security, and through this deception the bankrupt wrongfully unloaded the machinery, and that the railway company at no time waived its right of lien or surrendered the possession unconditionally to the bankrupt. The witnesses, except one, appeared before the referee. He had an opportunity of observing their demeanor while testifying, and is in a much better position to weigh the evidence than a person who merely reads the record. Connor et al. v. U. S., 214 Fed. 522, 131 C. C. A. 68; Southern Pine Co. v. S. T. Co., 141 Fed. 805, 73 C. C. A. 60; In re Covington (D. C.) 110 Fed. 143; In re Stout (D. C.) 109 Fed. 794.

The report of the referee will be affirmed.