[Civ. No. 7464.    Fourth Dist.    April 2, 1964.]

HOWARD W. STINER et al., Plaintiffs and Respondents, v. THE TRAVELERS INDEMNITY COMPANY, Defendant and Appellant.

Rubin, Seltzer & Solomon and Joseph Fisch for Defendant and Appellant.

Holliday & Folsom and David S. Folsom for Plaintiffs and Respondents.

GRIFFIN, P. J.—In the interest of securing uniformity of decision and settling important questions of law, the instant case was transferred for hearing and further decision to this court, under rules 62 and 63, California Rules of Court. An opinion was published. (*Stiner* v. *Travelers Indem. Co.* \*(Cal. App.) 35 Cal.Rptr. 57.)

Plaintiffs in this action were sued in municipal court action No. 95348 (denominated rent case) for $3,900 claimed installment rent due under a lease to Fifir, Inc., a corporation, attaching creditor. Two bank accounts of individual plaintiffs here were there attached in the sum of $185.22.

Defendant here, The Travelers Indemnity Company, was the surety on the undertaking in that action for the attachment in the sum of $2,500. In the rent case, plaintiffs here contested the validity of the lease by cross-complaint and the cause was transferred to the superior court for further proceedings. Plaintiffs here, and defendants and cross-complainants there, were successful in a trial on the merits. Plaintiffs here then brought this action (No. 278118) against defendant The Travelers Indemnity Company on the attachment bond. Judgment was rendered against defendant company on its bond for $1,487.60 attorney's fees incurred by plaintiffs in defending the rent case, together with costs of suit fixed at $18.05. In the rent case, John Stiner Construction Company, a corporation operated by the plaintiffs here, was also sued, but no assets of the corporate defendant were attached.

Code of Civil Procedure, section 539, sets forth the condition of an undertaking on attachment to the effect that: "... if the defendant recovers judgment, the plaintiff will pay all costs that may be awarded to the defendant and all damages which he may sustain *by reason of the attachment.* ..." (Italics ours.) ■ As to the recovery for deprivation of the use of money, the trial court was authorized to allow the legal rate of interest during the period of detention, which was about $15. As to the cost of attorney's fees in defending the rent suit brought by Fifir, Inc., the attaching creditor, it

---

*Reporter's Note: This opinion was vacated by the transfer of the case.

is claimed by defendant company that such fees were the entire fees of the case and were not assessable against it because it not only included fees for releasing the attachment but for defending the suit on its merits, and that these fees should be allocated accordingly.

It is also argued that the attachment bond could have been released in varying ways, i.e., by putting up a release bond, depositing the attached money in court under Code of Civil Procedure, sections 540-554, or by stipulation; and that no recovery is generally allowed for defending the suit on its merits unless the defense of the rent case is necessary to defeat the attachment. (Citing *Ideal Heating Corp.* v. *Royal Indem. Co.*, 107 Cal.App.2d 662, 664 [237 P2d 521].)

The true rule appears to be that if the damages are incurred in defending the suit itself, as distinguished from the damages caused by the attachment, no recovery is allowed for defending the suit on its merits, unless the defense of the suit was necessary to defeat the attachment. (*Reachi* v. *National Auto. & Cas. Ins. Co.*, 37 Cal.2d 808 [236 P.2d 151]; *Albertsworth* v. *Glens Falls Indem. Co.*, 84 Cal.App.2d 816 [192 P.2d 66]; *Byard* v. *National Auto. & Cas. Ins. Co.*, 218 Cal.App.2d 622 [32 Cal.Rptr. 613]; *Russell* v. *United Pacific Ins. Co.*, 214 Cal.App.2d 78 [29 Cal.Rptr. 346].)

The question before us then is whether the trial court could, under the evidence, properly determine that such attorney's fees as were allowed were necessary to defeat the attachment, and if not, whether an allocation should be made.

It appears that the rent case was an action for $3,900 for rent claimed to be due under a lease. The attachment was of a bank account containing $185.22. Defendant argues that the fixing of an attorney's fee and costs as damages for such a wrongful attachment for the amount indicated is an unreasonable award of damages and such damages could not be a proximate result of the attachment. It is true that Stiner himself testified that the reason he obtained an attorney was to prove that there was an illegal claim against him for funds demanded by Fifir, Inc. under the lease, and in retaining counsel it was his primary concern to win the lawsuit over the money claimed due under the lease, and, secondly, to release the attachment of funds; that there were not sufficient funds under attachment to create a monetary problem, but a judgment as prayed for would have put him into bankruptcy and it was primarily necessary to defeat that claim.

Plaintiffs' exhibit one is an itemized bill for all the services rendered and costs advanced by counsel in connection with the rent suit generally and the judgment was for the total amount sought in said exhibit.

Plaintiffs' complaint alleges that $1,487.60 was due plaintiffs for attorney's fees, plus costs and interest, for defending the action and that all proceedings respecting the levy of said attachment were fair on their face and for that reason plaintiffs made no motion nor brought any proceedings to discharge or dissolve said attachment, as said motion would have been unsuccessful and an idle act, and the *only* manner by which said attachment could be dissolved or discharged would have been to appear and win the above-mentioned action on its merits, and that to defend said action on its merits plaintiffs expended attorney's fees and costs in the sum of $1,487.60. The answer of defendant denied these allegations. In response to a request for an admission of facts, defense counsel admitted that said attachment and bond *were proper in form and fair on their face.*

The minutes of the court reflect the following minute entry: ''Opening statement by plaintiff and stipulation: Other than the legal questions at issue, the only factual issues in question are the amounts of fees and costs and the reasonableness thereof in defending the suit . . . .''

Defendant proposed the following findings:

''That the primary purpose in defending the aforesaid action ... was not to obtain a release of the funds under attachment, but to avoid a judgment requested therein.

''That it is true that the primary purpose for defending the aforesaid action wherein Fifer, Inc. was plaintiff was to avoid forcing the plaintiffs herein into a bankruptcy proceeding.'' These proposed findings were refused. The court then found:

''That it is true that in order to recover said judgment the plaintiffs incurred costs and expenses in the reasonable sum of $1,487.60.

''That it is true that plaintiffs were required to win said suit on its merits in order to dissolve or discharge the said attachment upon their personal property.'' Judgment was rendered for $1,487.60, plus costs.

The question of services performed and the reasonable value thereof, and whether it was necessary to determine the case on its merits to discharge the attachment, were factual questions for the determination of the trial court, especially where the record of the trial of the case indicates

that the parties have agreed that the only factual questions raised are "the amounts of fees and costs and the reasonableness thereof in defending the suit of Fifer, Inc. v. Howard W. Stiner Construction Co., Inc. . . . in the Municipal Court" and where there was an agreement that the levy of attachment was fair and lawful on its face; and the pleadings and findings indicate that the court considered the question of the futility of a motion to dissolve the attachment before trial and inferentially found that the only manner by which the attachment could be dissolved or discharged was to defend and win the original action on its merits. (*Schneider* v. *Zoeller*, 175 Cal.App.2d 354 [346 P.2d 515]; *Clark* v. *Andrews*, 109 Cal.App.2d 193 [240 P.2d 330].)

█ That the amount of money attached and fees charged may, comparatively speaking, seem unreasonable is not a true test. (*Arenson* v. *National Auto. & Cas. Ins. Co.*, 48 Cal.2d 528 [310 P.2d 961].)

█ Defendant next objects to two or three items contained in the lengthy itemized statement of services rendered in defending the action, i.e., preparation for and time at the pretrial hearing, standby time waiting for a trial department to become available, costs of transfer of the case, and defense of the action insofar as Stiner Construction Company was concerned, since no attachment was on its property.

It appears that defendant failed to segregate or question these particular items in the trial court. We are unable to intelligently hold as a matter of law that these services were not necessary to the defense of the case on its merits. It is too late to raise the questions as to these particular items for the first time on appeal. (*Johnson* v. *Hapke*, 183 Cal.App.2d 255 [6 Cal.Rptr. 603].) In *Gruner* v. *Barber*, 207 Cal.App.2d 54 [24 Cal.Rptr. 292], this court held that although the evidence given at the trial may, in the estimation of the appellate court, cast considerable doubt as to the amount claimed to be due, the appellate court will not reverse a finding in favor of the successful party if there is substantial evidence, contradicted or uncontradicted, which will support the finding.

As to the possibility of releasing the attachment bond by defendant before suit, it was held in *Gray* v. *American Surety Co.*, 129 Cal.App.2d 471, 476 [277 P.2d 436], that the owner is under no duty to secure release of attachment if he is financially unable to do so, and the burden to prove duty to mitigate damages is on the party asserting that duty. See also *Schneider* v. *Zoeller*, *supra*, 175 Cal.App.2d 354.

■ Whether plaintiffs had the ability to secure a release of the attachment was a factual question for the trial court.

■ The court here found that the attorney's fees were properly allowed and that a trial on the merits was necessary to determine the validity of the attachment. Ordinarily an appellate court should not reverse a trial court's determination of a factual, discretionary matter. (*Estate of Bristol*, 23 Cal.2d 221 [143 P.2d 689].)

It is the claim of defendant company that this court should not follow the holding in *Reachi* v. *National Auto. & Cas. Inc. Co., supra*, 37 Cal.2d 808. The holding in that case has been criticized to some extent. See dissenting opinion in *LeFave* v. *Dimond*, 46 Cal.2d 868 [299 P.2d 858, 60 A.L.R.2d 939], and 25 Southern California Law Review 452. In the *Reachi* case, the attachment was necessary in order to obtain jurisdiction over the respective defendants. Not so here. Such a differentiation has been definitely held to have no bearing on the issue. In *Byard* v. *National Automobile & Cas. Ins. Co., supra*, 218 Cal.App.2d 622, 625, it was said: "We cannot dismiss so lightly the consequences which necessarily result from a plaintiff's ex parte decision to subject a defendant's property and credit reputation to a long-term cloud in support of a claim which ultimately is proven to be unmeritorious. Appellant, of course, is unable to suggest any method by which a resident (as distinguished from a nonresident) defendant may free his property from an attachment that is valid and regular on its face except by defending the action upon its merits. If he fails to do so, the resident loses his property as surely as the nonresident, and, pending a determination on the merits, his property is equally burdened." With respect to a right of attachment, it was held, on pages 626-627: "The ultimate resolution of all actions, including the purest contract right calling for the payment of a sum certain, is an unknown factor prior to final judicial determination. Therefore it appears entirely reasonable to require one who contemplates availing himself of this 'predetermination' right to weigh carefully the probabilities, the risks, the advantages and disadvantages thereof. It must be assumed that he is fully informed as to the merits of his cause and his ability to establish it, and, if he entertains serious doubts on either point, he need only restrict himself to the position of the usual plaintiff who must await trial on the merits before seizing upon the assets of the defendant. Certainly this appears preferable to an arbitrary refusal fairly to compensate an alleged debtor for the monies he has expended in freeing

his property of the encumbrance placed upon it by invoking the only procedure available to him." Defendants contend that this decision and the decision in the *Reachi* case are contrary to other authority in this state on the subject. This claim was considered in the *Byard* case (hearing denied). There the appellate court said, at page 627: "Since the Supreme Court denied hearings in *Clark* v. *Andrews, supra*, and in *Schneider* v. *Zoeller, supra*, we do not feel that it is within the province of this court to adopt appellant's suggestion that we now refuse to apply the rules enunciated in *Reachi*.

"Although denial of a hearing is not the equivalent of express approval by the Supreme Court, it has been said that 'The order of [the Supreme Court] denying a petition for a transfer ... after ... decision of the district court of appeal may be taken as an approval of the conclusion there reached, but not necessarily of all of the reasoning contained in that opinion.' [Citing cases.] Any deviation from the apparently general holding of the *Reachi* decision and the other decisions above cited applying the rule therein set forth, must come from the Supreme Court itself."

We are therefore not in accord with the published opinion of the appellate department of the superior court reversing the judgment, under the circumstances related.

Judgment of the municipal court affirmed.

Coughlin, J., and Brown (Gerald), J., concurred.